UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

MARCEL GATES,

      Plaintiff,

    v.                    26-CV-268 (JLS)

DEBORAH A. HAENDIGES, ERIE
COUNTY COURTS/NEW YORK
STATE COURTS, ERIE COUNTY
CORRECTIONAL FACILITY,
MICHAEL C. CUMASI,[1]

      Defendants.

———————————————————————

**DECISION AND ORDER**

*Pro se* Plaintiff, Marcel Gates, is confined at the Erie County Correctional

Facility ("ECCF") and commenced this action seeking relief under 42 U.S.C. § 1983.

Dkt. 1.  He alleges violations of his constitutional rights in connection with his

criminal proceedings, as well as his conditions of confinement at ECCF.  *Id.*

Because Gates is a prisoner proceeding *in forma pauperis* ("IFP"), Dkt. 6, this

case is before the Court for screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B)

and 1915A(a).

For the following reasons, Gates's claims against Judge Haendiges, Erie

County Courts/New York State Courts, and ECCF, as well as his claims based on

—————————————

[1] The Clerk of the Court shall update the docket to reflect that Erie County
Courts/New York State Courts is a single defendant.  *See* Dkt. 1 at 2.

human rights treaty violations, are dismissed without leave to amend. Gates's remaining Section 1983 claims are dismissed with leave to amend.

## DISCUSSION

### I.    LEGAL STANDARDS

#### A.    Review Under the IFP Statutes

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

#### B.    Pleading Standards

In evaluating a complaint, the court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must contain sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (summary order) (to avoid *sua sponte* dismissal under the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)); *Scott Phillip Lewis v. R.L. Vallee, Inc., d.b.a. Maplefield's*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (summary order) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 557). Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it] cannot invent factual allegations that he has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## C.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Section 1983 "itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

## D.    Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however

4

unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

## II.    PLAINTIFF'S ALLEGATIONS[2]

Gates sues the Honorable Deborah A. Haendiges, New York State Supreme Court Justice ("Judge Haendiges"), Erie County Courts/New York State Courts, ECCF, and attorney Michael C. Cumasi ("Cumasi").[3] Dkt. 1 at 2.

Gates alleges that Judge Haendiges has "brok[en] people[']s rights." *Id.* at 6. Judge Haendiges has "laughed" at Gates in court and "acted in racist and sexist ways." *Id.* at 4. Judge Haendiges "forced a lawyer upon" Gates even though he

---

[2] Approximately one month after filing his complaint, Gates began filing additional documents. *See* Dkt. 7; Dkt. 8; Dkt. 9; Dkt. 11. The Complaint does not refer to these documents and Gates does not explain how the documents are related to the allegations made in his complaint. Consequently, with the exception of two points identified to clarify allegations made in the Complaint, the Court has not considered the documents in this screening order. *See Davies v. Christopher Cmty.*, No. 5:16-CV-0852 (TJM/DEP), 2016 WL 5947351, at *3 n.4 (N.D.N.Y. Sept. 9, 2016), ("the purpose of Rule 8 is to give notice of the claims asserted to the defendants so they may prepare an adequate defense. Asking defendants (or the court) to scour several dozens of pages of unidentified documents in search of a cognizable cause of action is manifestly unfair." (citation omitted)), *report and recommendation adopted,* 2016 WL 5955898 (N.D.N.Y. Oct. 13, 2016).

[3] Gates may have intended to sue Michael C. Cimasi. *See* Cimasi Law Office, https://cimasilaw.com/michael-c-cimasi/ (last accessed Mar. 19, 2026).

5

could afford his own attorney. *Id.* Outside of court Judge Haendiges has said "she will give men [one] million years of time in jail no matter what." *Id.*

At ECCF, Gates is forced to shower, use the toilet, and be strip searched in view of "both male and female" officers and other inmates. *Id.* at 6. The showers are rife with black mold, the drinking water and the sinks it comes from are not clean, and the food is substandard and served on unclean trays. *Id.* The bunk beds are not safe and the inmates are not separated based on a propensity for violence— *e.g.*, murders, killers, sex offenders, and those accused of violating protective orders by electronic means all live together. *Id.* When Gates does not do as he is told, and when he responds to officers' racist comments, he is "forced into a box with no outside light or movement." *Id.* Gates does not receive medical treatment, but even so, he is "woken up at all hours of the night by medical to be told the[y] will not do anything to help [him]." *Id.*

Gates asserts violations of the First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution. *Id.* at 3. He also alleges international treaty violations involving human rights—specifically, inmates' rights to medical treatment and safe living conditions and rights protected under "statutes of civil rights, human rights, federal laws of due process and more." *Id.* Liberally read, the Complaint alleges violations of the Fourth and Fourteenth Amendments. *See Richard v. Fischer*, 38 F. Supp. 3d 340, 361 n.5 (W.D.N.Y. 2014) ("*pro se* pleadings should be characterized according to the relief sought, and not to the label given to them by pro se prisoners unlearned in the law") (citation omitted).

6

Gates seeks damages in the amount of $50 million for "being treated as if [he] is less than human," mental stress, pain, and injury including P.T.S.D., and loss of family, work, money, peace, wellbeing, health, physical stress and pain, sleep, and treatment for mental health issues. *Id.* at 4.

## III.    ANALYSIS

### A.    Defendants Sued

#### 1. <u>Claims Against Judge Haendiges</u>

Absent "an express waiver of sovereign immunity, or a clear abrogation of that immunity by Congress, the Eleventh Amendment generally bars Plaintiff from suing courts within the New York State Unified Court system, as well as state judicial officers in their official capacities, in federal court for legal and equitable relief." *Gribbin v. New York State Unified Ct. Sys.*, No. 18-CV-6100(PKC)(AKT), 2020 WL 1536324, at *4 (E.D.N.Y. Mar. 31, 2020), *aff'd*, 838 F. App'x 646 (2d Cir. 2021) (summary order).

Judges enjoy absolute immunity for claims against them in their individual capacities absent action taken outside of judicial capacity or in the complete absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Judicial immunity "is to ensure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Paulk v. Kearns*, 596 F. Supp. 3d 491, 496 (W.D.N.Y. 2022) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). Such immunity is therefore not overcome by "allegations of bad faith or malice," *Mireles*, 502 U.S. at

7

11, or because the actions were taken "in error" or "in excess of . . . authority," *id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

Statutory judicial immunity likewise bars claims for injunctive relief against judges for acts taken in their judicial capacity unless the plaintiff alleges that "a declaratory decree was violated" or that "declaratory relief was unavailable." 42 U.S.C. § 1983; *see Felgemacher v. Carney*, No. 25-CV-128-LJV, 2025 WL 2261251, at *6 (W.D.N.Y. Aug. 6, 2025).

The allegations in the Complaint neither allege nor suggest that Judge Haendiges took action outside of her judicial capacity or in the complete absence of all jurisdiction. Nor has Gates alleged that Judge Haendiges violated a declaratory decree or that declaratory relief was unavailable.

Gates's claims against Judge Haendiges are therefore dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i), (iii) and 1915A(b)(1), (2) on the basis of immunity and as legally frivolous without leave to amend. *See Hahn v. New York*, 825 F. App'x 53, 55 (2d Cir. 2020) (summary order) (affirming a dismissal on judicial immunity grounds without granting leave to amend); *Brady v. Ostrager*, 834 F. App'x 616, 619 (2d Cir. 2020) (summary order) ("Given . . . judicial immunity, the district court correctly held that amendment would be futile."); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of 28 U.S.C. § 1915(g)."); *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, at *2 (2d Cir. Jan. 17, 2024) (summary order) ("[B]ecause it is 'unmistakably clear' based on the allegations in the complaint that judicial

8

immunity applies in this particular case and that the claims are thus legally frivolous, the district court was not required to provide [plaintiff] with notice and an opportunity to be heard prior to the dismissal." (quoting *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018))).

### 2. Claims Against New York Unified Court System

As noted above, Eleventh Amendment immunity "extends beyond the states themselves to 'state agents and state instrumentalities' that are . . . arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).

Gates sues "Erie County Courts/New York State Courts" as a defendant. Dkt. 1 at 2. The Court construes this as suing the New York Unified Court System. The "New York Unified State Court System is an arm of the State . . . and is therefore protected by Eleventh Amendment sovereign immunity." *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("Other courts in this Circuit have routinely concluded that the Eleventh Amendment shields the Unified Court System from civil liability."); *Bentely v. Thomas*, No. 22-CV-8215 (LTS), 2022 WL 14054223, at *2 (S.D.N.Y. Oct. 24, 2022) ("The County Court is part of the New York State Unified Court System . . . and as such, it is unquestionably an arm of the State." (citation modified)); *see also* N.Y. Const. Art. 6, § 1(a) ("The unified court system for the state shall . . . include the district, town, city and village courts outside the city of New York, as hereinafter provided."). Because New York has not waived its Section 1983 immunity, *see Trotman v. Palisades Interstate Park*

*Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977), and because Congress has not abrogated it, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), the New York Unified Court System is immune from suit, *see Gollomp*, 568 F.3d at 366.

Accordingly, Gates's claims against Erie County Court, the New York Unified Court System, and any other New York court are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2) on the basis of Eleventh Amendment immunity without prejudice[4] and without leave to amend.

### 3. Claims Against ECCF

Gates's claims against the ECCF are subject to dismissal because "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); *Tulloch v. Erie Cnty. Holding Ctr.*, No. 10-CV-0207S, 2010 WL 2609054, at *2 (W.D.N.Y. June 24, 2010) ("[C]laims against the Erie County Holding Center must be dismissed because . . . the Erie County Holding Center is merely an arm of the County, and does not have a legal identity separate and apart from the County and thus cannot be sued."). Claims against ECCF are dismissed

---

[4] To the extent Eleventh Amendment dismissals have been found to be jurisdictional, the dismissal is without prejudice. *See Karupaiyan v. New York*, No. 23-1257, 2024 WL 2174272, at *2 (2d Cir. May 15, 2024) (summary order) ("[B]ecause the district court lacked jurisdiction over the claims against the State of New York, it was erroneous to dismiss those claims with prejudice rather than without prejudice.").

for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) without leave to amend.

To the extent Gates intended to sue any ECCF staff, he could have elected to sue them in individual or official capacity. But official capacity claims against ECCF staff are "functionally equivalent" to a suit against Erie County. *Baines v. Masiello,* 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) (citing, *inter alia, Kentucky v. Graham,* 473 U.S. 149, 166 (1985)). To state a claim against Erie County, in an amended complaint, Gates will need to plead three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir. 2007).

An official policy or custom can be established by showing:

(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Kurmangaliyev v. City of New York,* No. 22-CV-5656 (LDH), 2023 WL 8654023, at *2 (E.D.N.Y. Dec. 14, 2023) (collecting cases).

To state a claim against ECCF staff in their individual capacities, Gates's amended complaint will need to allege, if possible, each individual staff member's personal involvement in the unconstitutional conduct. *Arnold v. Town of Camillus, New York,* 662 F. Supp. 3d 245, 266 (N.D.N.Y. 2023).

11

### 4. Claims Against Michael C. Cumasi

Criminal defense attorneys—whether public defenders, court-appointed attorneys, or privately retained counsel—are not persons acting under color of state law "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). But a defense attorney acts "under color of" law where "he is a willful participant in joint action with the [government] or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

Gates's allegations against Cumasi—an attorney apparently briefly appointed to represent Gates—encompass only actions Cumasi took or failed to take in the course of representing him. *See* Dkt. 1 at 4, 6-7; Dkt. 11 at 5. And Gates's allegation that Judge Haendiges asked Cumasi "to do her a favor" and represent Gates does not support an inference that Cumasi and Judge Haendiges worked together to deprive Gates of his rights. Dkt. 11 at 5. Moreover, the Complaint does not suggest that such an allegation could be plausible. Dkt. 1 at 6-7.

To state a claim against Cumasi, in an amended complaint, Gates must make non-conclusory factual allegations showing that Cumasi and Judge Haendiges willfully acted in concert to deprive him of his rights. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("[A] private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970))). Without more, Judge Haendiges asking Cumasi to represent Gates is not sufficient

12

to show that Judge Haendiges and Cumasi acted in concert to deprive Gates of his rights. Nor are Cumasi's comments to Gates, "get up, it's either me or jail, Dkt. 9 at 1, and "[the Judge] was going to remand you anyways[,] she just used me to do it," Dkt. 11 at 5, sufficient to show Judge Haendiges and Cumasi working together to deprive Gates of his rights. The reasonable inference to be drawn from the allegations is that amid a busy docket, Judge Haendiges had a defendant in need of an attorney and tapped a defense attorney present in court to fill that role temporarily.

Accordingly, Gates's claims against Cumasi are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim but with leave to amend.

## B.    Fourteenth Amendment Conditions of Confinement Claims

In the context of pretrial detention, conditions of confinement claims are analyzed under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

This standard includes an objective component "showing that the challenged conditions were sufficiently serious to constitute objective deprivations[.]" *Id.* The allegations supporting this component must "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the inmate's] health[.]" *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). Thus, "prison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary

13

living conditions." *Walker*, 717 F.3d at 125 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

There is also a subjective component that addresses whether a defendant possessed the requisite state of mind. Allegations supporting the subjective, or state of mind component of a Fourteenth Amendment claim must show "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Mere "knowledge and acquiescence to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim under Section 1983." *Smith v. Westchester County*, No. 19-CV-03605 (NSR), 2021 WL 2856515, at *7 (S.D.N.Y. July 7, 2021) (citation modified). A defendant's "high position or rank is not sufficient in and of itself to show that the defendant is, or should be aware of something—plaintiffs need more factual support showing *why or how* defendants are or should be aware of something." *Id.* (citing *Crispin v. Westchester County*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *4 (S.D.N.Y. June 10, 2019)).

### 1. Food

The Constitution requires that both prisoners and detainees "be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.'" *Smith*, 2021 WL 2856515, at *7 (quoting *Robles v. Coughlin*, 725 F.2d

14

12, 15 (2d Cir. 1983)); *Warren v. City of New York*, No. 18-CV-4410 (ALC), 2020 WL 353772, at \*3 (S.D.N.Y. Jan. 21, 2020).

Gates alleges he is forced to eat substandard food served on unclean trays. Dkt. 1 at 6. These vague allegations are not sufficient for purposes of screening. *See Twombly*, 550 U.S. at 570 (although a *pro se* complaint need not provide every last detail in support of a claim, it must contain sufficient factual allegations to nudge the claim "across the line from conceivable to plausible"). *Cf. Oliver v. Suffolk Cnty. Corr. Facility*, No. 21-CV-6028(JS)(ST), 2021 WL 5416649, at \*19 (E.D.N.Y. Nov. 18, 2021) (allegations that tap water and unsanitary food caused the inmates to suffer from stomach aches, nausea, and vomiting sufficient to allege objective element of Fourteenth Amendment conditions of confinement claim).

Gates has also failed to allege facts supporting the subjective element. Gates does not allege that there was a policy, as needed for a *Monell* claim, resulting in serving inmates unsanitary or spoiled food. Nor has Gates alleged facts to show that any individual defendant was deliberately indifferent to, and personally involved in, forcing Gates to eat substandard food. *See Shorter v. Nassau County*, 779 F. Supp. 3d 311, 315-16 (E.D.N.Y. 2025) (plaintiff did not allege personal involvement of any facility cook because he failed to specify which of them prepared his food and did so knowing about his "allergens" that caused the constitutional violation).

This claim is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to amend.

15

## 2. Drinking Water

Inmates must be supplied with water that is suitable for drinking. *See Bellezza v. Fischer*, No. 05 Civ. 98(DLC), 2006 WL 3019760, at *4 (S.D.N.Y. Oct. 24, 2006) ("Water that is suitable for drinking and bathing is undeniably one of 'life's necessities,' and . . . [must] be supplied to inmates."); *see also Cruz v. Jackson*, No. 94 CIV. 2600 (RWS), 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) ("Because contaminated water may pose serious health problems, an allegation that prison officials persistently provided only rusty drinking water would satisfy the objective component." (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993))).

Gates fails to "allege that the condition of the water posed an unreasonable risk of serious damage to his health." *Clay v. Lee*, No. 13-CV-7662 (KMK), 2017 WL 436041, at *5 (S.D.N.Y. Jan. 30, 2017) (citing *Walker*, 717 F.3d at 125). He alleges only that he is "forced to drink water that is unclean from unclean sinks." Dkt. 1 at 6. But he has not identified any "injuries specifically stemming from the alleged unsafe water, to show that the water was truly unsafe to drink." *Smith,* 2021 WL 2856515, at *8 (emphasis omitted).

Similarly to his food-related claim, Gates has also failed to plead specific facts showing any individual defendant knew or should have known of the serious risk posed by the drinking water and failed to remedy it.

This claim is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to amend.

### 3. Unsanitary and Unsafe Conditions

Gates alleges he was forced to use showers with black mold on the walls and floors and sleep on unsafe bunks. Dkt. 1 at 6.

Unsanitary conditions, "especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items . . . can rise to the level of an objective deprivation." *Shabazz v. Brunelle*, No. 3:25-CV-00060 (VAB), 2025 WL 1726323, at *5 (D. Conn. June 20, 2025) (quoting *Darnell*, 849 F.3d at 30). As the Second Circuit has instructed, "the proper lens through which to analyze allegedly unconstitutional unsanitary conditions of confinement is with reference to their severity and duration, not the detainee's resulting injury." *Edwards v. Arocho*, 125 F.4th 336, 351 (2d Cir. 2024) (quoting *Darnell*, 849 F.3d at 30). Even so, "the inquiry is not 'subject to a bright-line durational or severity threshold.'" *Id.* (quoting *Darnell*, 849 F.3d at 32)).

Gates has provided little detail of the duration or severity of these conditions. Gates also fails to allege facts to suggest any municipal policy or individual defendant was responsible for imposing or failing to remedy these conditions as needed to maintain a Fourteenth Amendment claim.

This claim is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to amend.

### C.    Remaining Fourteenth Amendment Claims

#### 1.  Denial of Medical Care

In the context of pretrial detention, claims involving the denial of medical care are also analyzed under the Due Process Clause of the Fourteenth Amendment. *See Darnell*, 849 F.3d at 29-35.  A Fourteenth Amendment medical indifference claim requires a pretrial detainee to plausibly allege an objective prong demonstrating the existence of a "serious medical need" and a *"mens rea"* prong that defendants "acted with deliberate indifference to such needs." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)); *Darnell*, 849 F.3d at 29).

The serious medical need element "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.*  There is "no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Courts consider factors such as "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86.

Under the *mens rea* prong, "something more than mere negligence" is necessary. *Id.* at 87 (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)).  Deliberate indifference "can be shown by something akin to recklessness" but "does not require proof of a malicious or callous state of mind." *Id.* at 86.  Thus, similar to

18

a conditions of confinement claim, a plaintiff can "allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87.

Gates's conclusory allegation that he is not getting medical treatment for his unspecified health issues, Dkt. 1 at 6, does not allege a serious medical need. *See Farinaro v. Coughlin*, 642 F. Supp. 276, 279 (S.D.N.Y. 1986) (the plaintiff merely stating "that a number of years ago he was told he might have liver cancer" did not rise to the level of a serious medical need). Moreover, Gates fails to allege facts to show that any defendant at ECCF was deliberately indifferent to his serious medical needs.

This claim is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to amend.

2. Substantive Due Process Claim

Gates alleges he was "forced into a box with no outside light or movement" when he did not do as he was told and responded to correction officers' racist comments. Dkt. 1 at 6. He also alleges that he was housed with "murders and killers and sex offenders" despite only being accused of violating a protective order by electronic means. *Id.*; Dkt. 5 at 4; Dkt. 9 at 3.

To determine whether a pretrial detainee's conditions of confinement are punitive in violation of the detainee's substantive due process rights, "court must

decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (alteration in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). While a "person lawfully committed to pretrial detention has not been adjudged guilty of any crime[,]" he may nevertheless be "detained for a suspected violation" of a law and subject "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37; *see Bass v. Swartwood*, No. 25-503, 2025 WL 3703527, at *2 (2d Cir. Dec. 22, 2025) (summary order) ("It is black letter law that a substantive due process deprivation may lie if a pretrial detainee is 'punished.'") (citing *Bell*, 441 U.S. at 535).

Gates has not alleged any facts suggesting that his conditions of confinement were punitive. He only alleges that he was in an unsafe, dangerous environment with murderers and sex offenders despite his pretrial status. Dkt. 1 at 6. Without more, the fact that Gates was housed with such individuals—whether they were convicted or not of serious crimes—is incidental to his pretrial detention and does not amount to a constitutional violation. *See Bell*, 441 U.S. at 524, 537, 546 n.28 (noting that where pretrial detainee plaintiffs were housed in a facility with convicted criminals, whether it is called "a jail, a prison, or a custodial center, the purpose of the facility is to detain," and "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates").

20

To the extent that Gates may allege a claim that he was punished by placement in restrictive confinement for not doing as he was told or responding to officers' racist comments, he nevertheless fails to identify a specific defendant who was personally involved in said treatment, or a policy leading to it.

This claim is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to amend.

### D.    Fourth Amendment Claims

The "Fourth Amendment 'protects individual privacy against certain kinds of governmental intrusion,' and it is well-established that its protections extend to prisoners and pretrial detainees." *Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016) (quoting *Katz v. United States*, 389 U.S. 347, 350 (1967); and citing *Bell*, 441 U.S. at 545, 559). To "state a cognizable privacy claim, an inmate must allege that (1) he 'exhibited an actual, subjective expectation of bodily privacy,' and (2) prison officials lacked 'sufficient justification to intrude on the inmate's [F]ourth [A]mendment rights.'" *Telesford v. Annucci*, 693 F. App'x 1, 3 (2d Cir. 2017) (summary order) (quoting *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016)).

Generally, the failure to provide an inmate "with privacy while using the bathroom does not rise to the level of a constitutional violation because it [is] reasonably related to maintaining the security of the detention facility." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 217 (E.D.N.Y. 2005) (addressing the privacy claim of a pretrial detainee under the Fourteenth Amendment); *see also Cooper v.*

*Annucci*, No. 9:18-CV-0762(GTS)(CFH), 2018 WL 11578624, at *15 (N.D.N.Y. Aug. 30, 2018) ("[T]here is no expectation of privacy in showers, clinics, or other areas in which prison officials routinely monitor and search prisoners." (quoting *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *12 (S.D.N.Y. Mar. 28, 2018))).

But the Second Circuit "has recognized a privacy interest concerning the 'involuntary viewing of private parts of the body by prison officials of the opposite sex.'" *Rivera v. Doe*, No. 3:22-CV-852 (SVN), 2023 WL 319600, at *3 (D. Conn. Jan. 19, 2023) (citation modified) (quoting *Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980)).  Courts "in this Circuit . . . 'distinguish between "regular" and "close" viewings of a naked prisoner of the opposite sex and "incidental" and "brief" viewings and find viewings of the latter type constitutional.'" *Id.* (quoting *Langron v. Koniecko*, No. 3:21-CV-1531 (MPS), 2021 WL 5827065, at *2 (D. Conn. Dec. 8, 2021)).

Gates's Fourth Amendment allegations fall into two categories: first, he was forced to strip naked and be searched in front of officers; and second, he was forced to use bathrooms with no dividers, so that inmates and officers could see him naked. Dkt. 1 at 6. Gates has failed to allege he had an actual, subjective expectation of bodily privacy or that the intrusions were not justified in either of these situations.  As to the first, Gates has not alleged anything about what prompted these searches, their frequency or duration, or anything else regarding the circumstances in which they occurred.  As to the second situation, Gates has not

22

alleged that any bathroom viewings of him naked by inmates or guards were anything beyond incidental, brief viewings that are inherent in a prison or jail setting. Lastly, as with his other claims, Gates has not identified an appropriate defendant who was personally involved in these searches and viewings, or the existence of a policy leading to these alleged violations.

These claims are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) with leave to amend.

### E.    Human Rights Claims

In addition to the constitutional amendments already discussed, Gates cites, as bases for federal jurisdiction, purported human rights provisions of federal law as well as United Nations treaties. Dkt. 1 at 3. The Court is unaware of the laws and treaties Gates references —however, it may be a reference to the Universal Declaration of Human Rights ("UDHR").

To the extent that Gates alleges a claim based on a purported violation of the UDHR or other treaty, "a treaty . . . must either be found to be self-executing or, alternatively, must have been the subject of implementing legislation by Congress" to be the basis for a Section 1983 claim. *Shabazz v. Annucci*, No. 9:20-CV-0057(LEK)(TWD), 2020 WL 13801106, at *7 (N.D.N.Y. Apr. 7, 2020) (quoting *Ciaprazi v. Goord*, 02-CV-915, 2005 WL 3531464, at *15 (N.D.N.Y. Dec. 22, 2005)). The Second Circuit has described the UDHR, however, as a "non-binding" document, *see id.* (citing *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 167–68 (2d Cir. 2003)), that does "not itself create obligations enforceable in federal

courts," *id.* (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004)). Thus, a purported violation of the UDHR does not give rise to a cognizable constitutional claim. *See id.*; *see also Hamilton v. Fischer*, 12-CV-6449, 2013 WL 3784153, at *5 (W.D.N.Y. July 18, 2013).

Any claim based on a violation of the UDHR or other treaty is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted. Because amendment would be futile, the dismissal is without leave to amend.

## CONCLUSION

For the above reasons, Gates's claims against Judge Haendiges, Erie County Courts/New York State Courts, and ECCF as well as his claims based on human rights treaty violations, are dismissed without leave to amend. Gates's remaining Section 1983 claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), but with leave to amend.

Gates may file an amended complaint by **May 28, 2026** in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Gates is advised that an amended complaint **replaces completely** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint in this action.

24

Gates is further advised that the Court grants him leave to amend those claims addressed above and any claims he believes are included in the additional documents he filed with the Court, to wit: Dkt. 5; Dkt. 7; Dkt. 8; Dkt. 9; Dkt. 11. A district court has the inherent authority to dismiss claims that exceed the scope of the court's order granting leave to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases).

Gates may attach exhibits to his amended complaint, but the Court will not independently examine exhibits that he does not specifically reference in the amended complaint. *See Belardo v. Annucci*, No. 9:22-CV-0032 (DNH/ATB), 2022 WL 22889131, at *3 (N.D.N.Y. May 10, 2022) ("It is not the Court's responsibility to scour those exhibits and attempt to manufacture a cause of action from the information contained in those materials." (citing *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (noting that the court "need not manufacture claims of error for an appellant proceeding *pro se*"); *Cleveland v. Breslin*, No. 97-CV-0486, 1997 WL 275101, at *2 (N.D.N.Y. May 16, 1997) (declining to examine exhibits not specifically referenced)).

## ORDER

IT HEREBY IS ORDERED that Gates's claims against Judge Haendiges are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1), (2) without leave to amend; and it is further

25

ORDERED that Gate's claims against Erie County Courts/New York State Courts are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2) without prejudice and without leave to amend; and it is further

ORDERED that claims against Erie County Correctional Facility are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) without leave to amend; and it is further

ORDERED that the Clerk of the Court shall terminate Judge Haendiges, Erie County Courts/New York State Courts, and Erie County Correctional Facility from this case; and it is further

ORDERED that Gates's claims based on human rights treaty violations are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim without leave to amend; and it is further

ORDERED that Gates's remaining Section 1983 claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim, but with leave to amend; and it is further

ORDERED that Gates may file an amended complaint as directed above by no later than **May 28, 2026**; and it is further

ORDERED that the Clerk of the Court shall send to Gates with this order one copy of each of the following documents: Dkt. 1; Dkt. 5; Dkt. 7; Dkt. 8; Dkt. 9; and Dkt. 11, a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

26

ORDERED that if Gates does not file an amended complaint by the deadline set forth above, the claims dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii), (iii) and 1915A(b)(1), (2) will remain dismissed and the Clerk of the Court shall close this case without further order; and it is further

ORDERED that this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Gates must immediately notify the Court in writing each time his address changes. Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

Dated:    April 13, 2026
          Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

27